STATE of Iowa, Plaintiff,

v.

Frank R. WEST, Defendant.

James L. GARDNER, et al., Appellants,

v.

Walt CHAMBERLAIN, et al., Appellees.

No. 66320.

Supreme Court of Iowa.

June 16, 1982.

John R. Leed, Oakland, and Milton L. Hanson, Avoca, for appellants.

James F. Fowler and Darrell Goodhue of Wilson, Goodhue & Fowler, Indianola, and Robert D. Nelson of Rasmussen & Nelson, Exira, for appellees.

Considered by REYNOLDSON, C. J., and HARRIS, ALLBEE, McGIVERIN, and SCHULTZ, JJ.

SCHULTZ, Justice.

Appellants appeal from a sentencing order approving a plan of restitution by defendant, Frank R. West. The plan provided for distribution of the restitution fund among appellees, twenty-eight victims of the criminal offense. Appellants, also claiming to be victims of West's criminal activity, allege that the district court incorrectly denied their claims to share in the distribution of the restitution fund. We treat the appeal as a petition for writ of certiorari and deny the writ.

This case stems from the insolvency and subsequent bankruptcy on January 7, 1975, of American Beef Packers, Inc. (hereinafter ABP). During the period of insolvency preceding January 7, certain individuals did not receive payment for cattle they delivered to ABP. Thirty grand jury indictments, representing thirty cattle producers who did not receive payment for cattle sold to ABP on January 6, 1975, were handed down charging West with conspiracy and false pretenses. The Story District Court dismissed the indictments, and we reversed and reinstated them in *State v. West*, 252 N.W.2d 457 (Iowa), *cert. denied*, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977).

Because of difficulty in obtaining extradition of certain witnesses, the indictments were subsequently dismissed without prejudice. On December 28, 1977, four days before the effective date of the revised Iowa Criminal Code, the Pottawattamie County Attorney filed thirty separate trial informations, representing the same thirty cattle producers, charging West with obtaining cattle by means of false pretenses in violation of section 713.1, The Code 1975.

Pursuant to a plea bargaining agreement, West appeared before a district associate judge on November 7, 1979. The record of the proceeding reveals the agreement reached between the State and West to be as follows:

DAVID RICHTER [Assistant County Attorney]: ... On behalf of the State of Iowa, it is the understanding by myself that the plea bargain is as follows: (1) That the Case 2112–C would be moved from the venue of Avoca to the Pottawattamie County Courthouse in Council Bluffs. And that the defendant will waive venue and ask that the Court take care of this matter here in Council Bluffs rather than Avoca. (2) That we will file

an amendment to the True Information which has previously been filed herein. Such amendment has been approved this morning. Wherein the original charge of 713.1 of the 1975 Code is amended in the violation now stated is 713.2(2)a. That the defendant will enter a not guilty plea; however, that he will stipulate to the facts as contained in the original Information filed in Case Number 2112–C. Said stipulation to those facts contained shall be for the purpose of this hearing only and to be used specifically for no other purpose whatsoever. That the Court will find the defendant guilty. That the State of Iowa will recommend a fine of $500 and one year probation. And that the State of Iowa will recommend that the Court ask for $100,000 to be paid by Mr. West as restitution in this matter. That's my understanding of the plea bargain agreement, Your Honor.

THE COURT: Counsel.

MR. LINN [Defense Counsel]: That's also my understanding, Your Honor, with one addition. That is the State of Iowa through Attorney General or any other officer will not take any civil action against Mr. West because of this plea or because of any of the transactions herein stipulated to.

MR. SWANSON [Assistant Attorney General]: On behalf of the State, I so represent that.

THE COURT: All right.

MR. LINN: Or further criminal action too.

MR. SWANSON: Also.

THE COURT: Now, are there other criminal matters currently pending?

MR. RICHTER: As part of this agreement, Your Honor, it's going to be the recommendation of the County Attorney and the Attorney General that the remaining twenty-nine counts be dismissed upon the running of appeal day. And we are willing to be bound by that in the event Mr. West files no appeal of what happens here today. The State of Iowa will dismiss the remaining twenty-nine counts.

The amended information, which had been approved earlier by a district judge, charged West with the criminal offense of concealment of material facts, in violation of section 713.24(2)(a), The Code 1975, between December 10, 1974, and January 7, 1975. The charge pertained only to West's activities concerning one victim, one of the appellees.

The court found West guilty of violating section 713.24(2)(a), fined him $500 plus costs, and placed him on probation for a period of one year, on the condition that he make restitution payment in the amount of $100,000. The $100,000 restitution was promptly paid. The plan of restitution provided for distribution of the fund pursuant to the direction of the attorney general. The attorney general submitted a detailed distribution arrangement identifying as victims of West's criminal offense, and thus as recipients of the restitution fund, the thirty cattle producers represented in the original indictments and subsequent trial information who had sold cattle to ABP on January 6, 1975.

Other cattle producers who had not received payment for cattle sold to ABP on other dates between December 10, 1974, and January 7, 1975, heard about the restitution plan and submitted formal claims to share in the restitution fund. The court scheduled a hearing on the claims and caused notice to be published advising any additional claimants to submit verified claims prior to the hearing. Following the hearing, the court filed an order of restitution. The order noted that two of the thirty cattle producers included in the attorney general's distribution arrangement had been paid in full and provided that the $100,000 fund be divided on a pro rata basis among the remaining twenty-eight such producers. Appellants' claims to share in the restitution fund were denied, and they appealed. They contend the district court wrongly denied their claims. Prior to reaching the merits of this issue, however, we must resolve a threshold jurisdictional issue.

I. *Jurisdiction.* Appellees filed a motion to dismiss the appeal, alleging that this court lacks jurisdiction. They claim the right to appeal in criminal and civil cases is statutory and that chapter 814, The Code, does not provide authority for this appeal. Appellees also claim appellants lack standing to appeal because they were not collectively or individually parties to the criminal proceeding that gave rise to this controversy.

Appellants do not address these issues in their brief. They ask us to treat this matter as an action for writ of certiorari under Iowa R.App.P. 304. We take appellants' failure to address the issues concerning the propriety of their appeal as a concession that certiorari is the only means by which we may review the district court's denial of their claims to share in the restitution fund. We will therefore examine appellants' claims to determine whether review is proper under rule 304.

■ Certiorari lies when an inferior court is alleged to have exceeded its jurisdiction or to have acted illegally. *Hadjis v. District Court,* 275 N.W.2d 763, 765 (Iowa 1979). When an appeal has been taken improperly because no right of appeal exists, we may treat the application for appeal as a petition for writ of certiorari. Iowa R.App.P. 304; *e.g., In re Marriage of Welsher,* 274 N.W.2d 369, 371 (Iowa 1979).

■ In this case, appellants contend the district court exceeded its jurisdiction in approving the plan of restitution and acted illegally in excluding them from the class of persons entitled to share in the restitution fund. Certiorari is thus the appropriate means for seeking review of the district court's action. Appellees, however, contend that appellants lack standing to obtain certiorari under rule 304. We disagree.

■ Certiorari, which is an extraordinary remedy, is available to all persons who show a substantial interest in the activity challenged. *Hohl v. Board of Education,* 250 Iowa 502, 509, 94 N.W.2d 787, 791 (1959). Generally, only a party to an action may obtain the writ. An exception exists, however, when the public is concerned with the subject matter of the action, in which case anyone interested may petition. *Id.* In order for persons who are not parties to assert a claim, they must prove that they have been injured in a special manner, different from that of the public generally. *Williamson v. Kelley,* 271 N.W.2d 727, 729 (Iowa 1978). The tendency is to broaden the scope of the writ when no appeal is permitted and injustice will result unless such relief is granted. *Hohl,* 250 Iowa at 509, 94 N.W.2d at 791–92.

■ The question, then, is whether appellants have been injured in a special way, different from that of the public generally. This question clearly must be answered in the affirmative. Appellants claim to be victims of a criminal offense committed by West and allege to have suffered pecuniary damages as a result of his criminal activities. When the district associate judge denied appellants' claims to the restitution fund, their only recourse, in the absence of the right to appeal, was the writ of certiorari.

We hold that appellants' have standing to maintain this matter as an action for a writ of certiorari; and we will treat their application for appeal as a petition for a writ under rule 304.

II. *Restitution.* Appellants claim that since the amended trial information charged that West's criminal activity occurred between December 10, 1974, and January 7, 1975, the trial court erred in distributing the restitution fund among only the cattle producers who delivered cattle to ABP on January 6. Appellees counter by contending that there is no evidence that appellants are "victims" entitled to restitution within the meaning of section 907.12, The Code. They maintain that at most the evidence shows that appellants sustained pecuniary losses that may have been discharged in bankruptcy.

Except for minor changes not important here, section 789A.8, The Code 1975, is identical to section 907.12 of the current criminal code. Section 907.12 provides in pertinent part:

1. As used in this section, unless the context otherwise requires:

a. "Victim" means any person who has suffered pecuniary damages as a result of the defendant's criminal activities. . . .

. . . .

c. "Criminal activities" includes any crime for which there is a plea of guilty, verdict of guilty, or special verdict upon which a judgment of conviction may be rendered and any other crime committed after July 1, 1972 which is admitted or not contested by the defendant, whether or not prosecuted. . . .

d. "Restitution" means full or partial payment of pecuniary damages to a victim.

2. It is the policy of this state that restitution be made by each violator of the criminal laws to the victims of his or her criminal activities to the extent that the violator is reasonably able to do so. This section shall be interpreted and administered to effectuate this policy.

3. If the trial court exercises any of the sentencing options under section 907.3, the court shall require as a condition of probation that the defendant, in co-operation with the probation officer assigned to the defendant, promptly prepare a plan of restitution, including a specific amount of restitution to each victim and a schedule of restitution payments. . . .

4. The defendant's plan of restitution and the comments of the defendant's probation officer shall be submitted promptly to the court. The court shall promptly enter an order approving the plan or modifying it and providing for restitution payments to the extent that the defendant is or may become reasonably able to make restitution. . . .

. . . .

9. This section and proceedings under this section shall not limit or impair the rights of victims to sue and recover damages from the defendant in a civil action. . . .

When a criminal defendant is not sentenced to a term of incarceration, it is the public policy of this state to require that restitution be made. § 907.12(2)–(3), The Code.

In a certiorari action, the plaintiff has the burden of proving that the lower court exceeded its jurisdiction or otherwise acted illegally. *Gibb v. Hansen*, 286 N.W.2d 180, 184 (Iowa 1979). As used in a certiorari action, the term "illegally" means substantial evidence does not exist to support the findings of fact on which the lower court based its conclusions of law or, when the evidence is uncontroverted, error in interpreting the law. *Collier v. Denato*, 247 N.W.2d 236, 238 (Iowa 1976).

Section 907.12(1)(a) specifically provides that a "victim" is a person who has incurred a monetary loss as a result of a defendant's criminal activities. Criminal activities are separated into two classes: (1) crimes for which a judgment may be entered, and (2) crimes that defendant admits committing or does not contest. § 907.12(1)(c), The Code. Appellants do not contend the terms "victim" or "criminal activity" are defined ambiguously. Thus, there is no need to go beyond the language of the statute to ascertain legislative intent. *See State v. Baker*, 293 N.W.2d 568, 572 (Iowa 1980). Appellants must therefore show that the district court erred as a matter of law in concluding that they failed to present evidence sufficient to establish that they are "victims" within the meaning of section 907.12(1)(a).

The evidence is uncontroverted that the judgment of conviction by guilty plea against West was rendered on the basis of his criminal activities involving one of the appellees and not on the basis of activities involving the appellants. Also, there is no evidence that West admitted or did not contest committing a crime against the appellants. The minutes of testimony attached to the amended trial information, which West admitted to be true as part of the plea agreement, show only that West's criminal activity was directed at thirty people, the appellees and two other persons who were paid. There is no admission of criminal activity directed against the appellants.

The State confined its prosecution of West to persons whose cattle were delivered to ABP and slaughtered on the afternoon of

January 6, 1975, after West learned ABP could not obtain a $15 million loan. ABP thus slaughtered appellees' cattle knowing it did not have the money to pay for them. The prosecutor testified that he felt that there was evidence of good-faith attempts to negotiate a loan prior to noon on January 6 and that evidence of nonpayment prior to that time was not sufficient to institute criminal charges against West.

The record conclusively establishes that the appellants were not victims of the criminal activity for which defendant pleaded guilty. Although appellants may have been victims of criminal activity by West, the State did not include that activity in the charge filed against West. Appellants did not prove that West admitted the commission of crime against them. Accordingly, we hold that the district court properly approved the restitution plan.

We have thoroughly considered all of the contentions raised by the parties, whether or not expressly addressed, and conclude that the appellants have not established their burden to show that the district court exceeded its jurisdiction or otherwise acted unlawfully. We therefore deny appellants' petition for writ of certiorari.

WRIT DENIED.